FILED
'SUPERIOR COURT
OF GUAM

2016 JAN 11 PM 4: 10

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEDRO TAJALLE, | ) Domestic Case No. DM0903-03 |
| | ) Child Support Case No. CS0714-03 |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) |
| | ) **RECOMMENDED** |
| THE ESTATE OF AMYLYNN T. | ) **FINDINGS OF FACT &** |
| ANDERSON, | ) **CONCLUSIONS OF LAW** |
| | ) |
| Defendant(s). | ) |
| | ) |

**PROCEDURAL BACKGROUND:**

Child support in this case was initially set by a Superior Court Judge after a trial in DM0903-03 in May 2004. A Stipulated Order of Paternity, Child Custody, Visitation and Support was issued in this case on May 27, 2004 and provided that the parties would share week-on-week-off custody. The child support obligation was taken care of in paragraph 10 on page 5 of the Stipulated Judgment of Paternity, Child Custody, Visitation and Support. That paragraph stated, "In lieu of child support, and consistent with the Guam Child Support Guidelines, Plaintiff [Tajalle] shall pay for the monthly private school tuition and annual registration fees for the child. Defendant shall pay for any extended care, after school care, and reasonable summer school or summer camp expenses." There was no other order or award of monthly child support.

This provision was later modified in a Stipulated Amended Judgment on Custody Visitation and Support filed on August 30, 2004, but nothing involving the issue of child support was amended by that Stipulation.

The case was not thereafter brought before the Superior Court until the Office of the Attorney General Child Support Enforcement Division (hereinafter "AG" or "CSED") entered an

-1-

appearance in the Domestic case on February 21, 2014. Child support case No. CS0714-03 had been filed in 2003, but since child support and all related issues had been litigated in DM0903-03, the child support case CS0714-03 was dismissed by the Administrative Hearing Officer on January 28, 2010. However, duplicate documents ended up being filed in both cases, so both cases continue to be captioned, though DM0903-03 is the controlling case. Therefore, the caption in which Pedro Tajalle is the Plaintiff and Amylynn Anderson is the Defendant is the proper caption.

On April 3, 2014, the Attorney General filed a Motion for Modification of Child Support on the basis of changed circumstances. The Motion went before the Administrative Hearing Officer for oral argument on June 19, 2014. Plaintiff Tajalle appeared with his Attorney William Jones and Defendant was not present but was represented by her Attorney William Pole. CSED was represented by Attorney Perfecto T. Galman. At this hearing, the Administrative Hearing Officer took evidence, including Plaintiff Tajalle's Leave and Earning Statement, into account. Based on best information given to the Hearing Officer, a temporary child support order of $1,682.67 per month was ordered to start June 2014. However, no child support worksheet was filed.

Contemporaneous with the hearing at which Temporary Child Support was ordered, the private parties filed requests directed to the Superior Court Judge for Orders to Show Cause re: Contempt against each other. The mutual requests for contempt generated filings in DM0903-03 for several weeks. The parties agreed that the contempt filings would be entertained not by the Administrative Hearing Officer, but by the Superior Court Judge, so they were never delegated to the Administrative Hearing Officer. The mutual requests for issuance of an Order to Show Cause to each side were originally scheduled to be heard starting on October 1, 2014, though the hearings were later postponed.

The mutual requests for Orders to Show Cause were finally argued to the Honorable Verne P. Perez on November 21, 2014. Attorney Jones appeared with Plaintiff Tajalle and Attorney Pole with Defendant Anderson. The case was referred to mediation, which was ultimately not successful. Therefore, the OSC hearings were continued to a hearing on March 6,

2015, again before Judge Perez. The minutes of that day show that the "OSC[s] held in abeyance." From this, it is concluded that no Order to Show Cause in re: Contempt was ever issued. However, the monthly order of $1,682.67 continued to accrue as the amount of child support in the case.

On March 25, 2015, Judge Perez issued an "Order After Hearing re: Custody *Pende Lite,* Agent Letter and Child Support." This Order was prepared by Plaintiff Tajalle's Attorney and approved as to form and content by Defendant Anderson's Attorney. Paragraph One of this Order provided that "the Minor . . . shall spend ten days with the Plaintiff's household on Guam. This custody arrangement shall be contingent upon the desire of the minor who can reduce or augment her visitation with her paternal household." Nothing in this order or in the minutes memorializing the November 2014 or March 2015 hearings indicate that there was any change in the amount of child support to be paid by Plaintiff Tajalle to Defendant Anderson. The Order is also silent on whether the minor was to spend a ten-day period with the "Plaintiff's household" every month, or just once during March 2015.

Meanwhile, the AG kept track of Plaintiff Tajalle's payments. The AG filed a Financial Activity Report on January 14, 2015, showing that Plaintiff Tajalle was obligated to pay $1,682.67 starting June 1, 2014, and showing that he began paying this amount on August 29, 2014. The AG Filed another Financial Activity Report on July 5, 2016, which shows that Plaintiff Tajalle paid $1,682.67 per month until the end of July 2015.

The case(s) took an unpredictable turn when Defendant Anderson died on August 31, 2015, while her daughter was still 17. Her Attorney notified the child support Administrative Hearing Officer of the death on September 2, 2015. The Administrative Hearing Officer immediately ordered the monthly payments of $1,682.67 to immediately cease. The payments ceased by September 3, 2015, although the CSED failed to collect the $1,682.67 for the month of August 2015, when Ms. Anderson was alive and had custody of the minor.

The minor turned 18 on November 25, 2015. By this date, she was appointed the Administrator of the Estate of Amylynn Anderson and appropriately substituted in as the

appropriate Defendant in this case. When the case was next presented to the child support tribunal, the caption was "Pedro Tajalle, Plaintiff versus Estate of Amylynn Anderson,"

By May of 2016, the child support Administrative Hearing Officer ordered that all funds in the possession of the CSED collected under her June 2014 Order should be released immediately to the Estate of Amylynn Anderson, then represented by her daughter, Sierra Tajalle.

By April 21, 2017, the parties to the case had been appearing periodically on the child support case because an issue remained outstanding how much Tajalle owed Anderson. However, because Sierra was over 18, and the Administratrix of Anderson's estate, the real issue in the case is the amount of arrears Tajalle owes his daughter on behalf of her mother. There has been no dispute that Tajalle's child support obligation ended on September 1, 2015, immediately after Defendant Anderson died. Therefore, the only fact issues left to the court is how much Tajalle owed the Estate of Anderson between the date that child support was ordered in June 2014, and the end of August 2015, on Defendant's untimely death.

The starting place for calculating Tajalle's arrearage to Sierra is the June 2014 order for $1,682.67 per month, ending on September 1, 2015. This is a straight calculation for 15 months at $1,682.67.

However, in calculating the arrearages, counsel for Plaintiff Tajalle notified the court that he intended to request shared-custody credits and possible abatements to his child support obligation for periods prior to September 1, 2015. His basis for the credits was that his monthly obligation should be credited with times that he had custody of Sierra. On November 1, 2017, the parties appeared to present testimony on the issue of whether abatements or shared-custody credits would be applied in calculating arrearages. Evidence and testimony was presented on November 1, 2017, which will be summarized below.

**ARREARAGES and ABATEMENTS:**

The two principles of child support that are invoked by Plaintiff Tajalle's requests are, first, joint physical custody versus sole custody, and second, credits for visitation and/or abatements.

-4-

The Guam Child Support Guidelines as adopted by the Guam Legislature set forth a formula for shared custody. The Office of the Attorney General Child Support Enforcement Division Guam Child Support Guidelines of 2009 set forth an exact amount of time that a minor must spend with a parent in order for that parent to avail himself of the "Shared Custody" calculations rather than the "Sole Custody" calculations. Shared Custody is calculated pursuant to 19 GAR §1204, "Guidelines in Sole Custody Situations," and addresses situations where one parent has the minor or minors at least forty percent (40%) of the time. The regulations state, "a parent has shared physical custody of children for purposes of this guideline[] if the children reside with that parent for a period specified in writing in the custody order of at least 40%, but no more than 60%, of the year, regardless of the status of legal custody."

During the time period during which the child support obligation arose -- June 2014 to August 2015 -- the pleadings and testimony reveal that the minor lived with Defendant Anderson. Plaintiff Tajalle never stated that he had sole custody, but he argues that during certain months, he had a sort of shared custody such that perhaps his child support obligation would qualify for the 40% "shared custody" arrangement.

If Plaintiff Tajalle's arrangement with his daughter did not meet the 40% "shared custody" arrangement discussed in §1204, then Plaintiff Tajalle argues other grounds under which his arrearages should be reduced. Specifically, Plaintiff argues that the court should consider equitable circumstances under 19 GAR §1203(j) and (k), "Visitation" and "Abatement" respectively. Under "Visitation," a parent's contributions made during planned visitations may decrease his obligation: "The court may consider the costs of visitation and may allocate such costs between the parents in proportion to their ability to pay." Alternatively, under "Abatement" the court may consider periods during which the non-custodial parent in a sole custody situation directly provides for an "extended period of time:" "When the non-custodial parent is directly providing for the child[]'s needs for an extended period of time, such as on a long visit, the court may order a reduction of child support paid to the custodial parent."

The testimony presented on November 1, 2017, surrounded three periods of time during which Plaintiff Tajalle was not the custodial parent:

-5-

1. June and July 2014: Plaintiff Tajalle argued that when he spent an extended trip from his duty station in Texas to Guam in June and July of 2014 to attend his son's graduation, custody reverted to the 50-50 custody that had been in effect prior to the 2014 renewal of custody/child support in DM0903-03.

2. October and November 2014: Plaintiff Tajalle argued that he spent a lot of time on Guam during this time due to the dueling requests for Orders to Show Cause. As a consequence, he argues, spent a lot of time with his daughter and the Court should take his daughter's frequent visits into account during this time.

3. June and July 2015: Plaintiff Tajalle argued that when he came to Guam in June and July 2015 to attend Sierra's graduation, the custody of Sierra reverted again to 50-50.

The testimony that was presented on November 1, 2017, consisted of the telephonic testimony under oath by Plaintiff Pedro Tajalle, and also consisted of personal testimony under oath by Sierra Tajalle, regarding the times that Sierra spent with Plaintiff Tajalle at his residence on Guam during the above-three referenced periods of time.

After considering the testimony and evidence presented by the parties, the undersigned makes the following findings of fact:

**FINDINGS OF FACT:**

1. Pedro Tajalle was on an unaccompanied military tour in Texas for the time periods in question. He maintained a home on Guam in which lived his wife and four other children with Mrs. Tajalle, at least one of whom was a minor during the time period in question.

2. Mr. Tajalle came to Guam for his son's graduation from high school in June 2014, but he does not recall the exact date. He used three weeks of his annual allotment of 30 days (four weeks) of leave for this trip, therefore Mr. Tajalle was on Guam for three weeks in the June-July 2014 time frame. Mr. Tajalle does not recall being on Guam for the Fourth of July holiday.

3. During those three weeks in 2014, Sierra recalls staying in Mr. Tajalle's household in early June 2014 for a short period or periods. She stated that she lived "mostly" with her

-6-

mom. She stated that the most time she spent at her father's household during the time he was home in June 2014 was approximately one week.

4. In June of 2014, Sierra had a boyfriend. She believed that both her father Pedro Tajalle and his wife thought the boyfriend was unsuitable.

5. In October and November 2014, Mr. Tajalle returned to Guam for some time. He recalls specifically being on Guam for his wife's birthday on October 8, and he was also on Guam for Thanksgiving, the fourth Thursday in November. He stated also that he was with his Guam household during his anniversary of October 17 and on Halloween, October 31, 2014. He also was on Guam for Sierra's birthday, initially stated to be November 24 and later corrected to be November 25. The stated reason for the extended visit to Guam was the litigation involving Attorneys Jones and Pole over Orders to Show Cause, though the record shows that the only hearing held during this period of time was on November 21, 2014, due to continuances.

6. During October and November 2014, Sierra recalls staying at her father's household on Halloween, and perhaps on one other occasion. Sierra also recalls that on one occasion after she spent the night, her father and his wife had to take Sierra to Defendant Anderson's Attorney, Attorney William Pole's office the next day, because, as Sierra recalls, her father and mother were involved in court hearings around this time. Sierra recalls she spent Thanksgiving with her father's family but did not stay the night at his house the night of Thanksgiving.

7. In October and November 2014, Sierra played interscholastic volleyball. She does not recall that her father attended any of her volleyball games.

8. In June of 2015, Pedro Tajalle returned to Guam at about the same time that Sierra graduated from Guam High.

9. Sierra stated that she graduated from Guam High in the latter part of May 2015 or on June 5, 2015. She recalls her father came back in June 2015. Sierra stated because Mrs. Tajalle did not approve of Sierra's boyfriend, Pedro's wife did not attend Sierra's

graduation -- she had been told that she would be "uncomfortable" due to the strained relationship.

10. Sierra stayed with her mom during June of 2015. She has no recollection of staying at her father's house any time after June 5, 2015. Sierra recalls that her father left Guam in mid-July, after the Fourth of July holiday.

On the basis of the foregoing Findings of Fact, the Court cannot conclude that the parties shared custody of the minor during the months in question: (1) June and July 2014 (2) October and November 2014 and (3) June and July 2015. There was insufficient testimony that Sierra was splitting her time between her mother's and her father's households. Therefore, it is not appropriate to use the shared custody calculation available under 19 GAR §1204, where the minor spends at least 40% of time at a parent's house.

Further, there is insufficient evidence that the minor spent large amounts of time in her father's household during his extended visits in June and July 2014, in October and November 2014 and June and July 2015. Clearly, Sierra spent time with her father's household, but the testimony and evidence do not demonstrate that she spent even one-fourth of her nights in the father's household. The testimony established that like many girls her age, Sierra was rooted in her high school activities and social life. She was welcomed at her father's household for holidays and non-holidays alike. However, typically for a girl her age, her life centered her sports, her friends and boyfriend, all while living primarily with her mother. There are no factual grounds on which to base an abatement or any other unusual credits to Plaintiff Tajalle's care of his daughter during the time periods that he has argued for. The facts established that Plaintiff Tajalle's responsibility to his daughter was well met in his timely payments of the child support as ordered by the Administrative Hearing Officer.

However, this does not resolve the issue how much arrears is owed by Plaintiff Tajalle to the Estate of Anderson. In a March 9, 2017 "Submission of Statement of Arrears," the Attorney for CSED reversed its position on the amount of child support that will retroactively apply. The AG had previously supported the monthly collection of $1,682.67 in three Financial Activity

-8-

Reports. Because of the changes represented in the March 9, 2017 Statement of Arrears, it is unclear what position the AG will take with respect to Plaintiff Tajalle's arrears total.

CSED was present when the temporary amount was ordered by the Administrative Hearing Officer in 2014, and is on record as having requested $1,200.00 per month (*see Minutes* of June 19, 2014, p. 2 of 4, "AG: $1,200.001,200 based on DFAS"). Defendant's Attorney requested the $1,682.67 per month at that hearing (*see Minutes* of June 19, 2014, p. 3 of 4, "D/A: $1,682.67 as temporary amount"). In its Motion to Modify, the Government's Attorney wrote that it would be asking for a Modification to Modify Child Support to $378.87 or "other amount the court finds appropriate pursuant to the child support guidelines." See AG's Motion to Modify Child Support Order, April 3, 2014, page one, line 23-24.

The CSED stood by the Administrative Hearing Officer's temporary amount of $1,682.67 for all the months in which the AG has been involved in the case. On September 13, 2015, just after the Defendant's death, CSED filed a Financial Declaration confirming its collection of $1,682.67 per month. On January 14, 2015, the CSED filed a second Financial Declaration confirming its collection of $1,682.67 per month. Finally, it filed a Financial Declaration confirming its collection of $1,682.67 per month for a third time in July of 2016. After three Financial Declarations confirming the child support amount as ordered by the Administrative Hearing Officer at the June 2014 hearing -- at which financial information was discussed -- the AG now apparently seeks to retroactively change the monthly child support, suddenly changing its mind almost two years after Defendant Anderson's death. The Attorney for CSED is invited to clarify its position on this.

One final issue with respect to the amount of arrears owed by Plaintiff: Although Plaintiff Tajalle was making consistent payments on his obligation, the last child support payment shown is for July of 2015. Although Ms. Anderson died on August 31, 2015, there is no dispute that Sierra was with her mother throughout all of August. The prior Administrative Hearing Officer did not terminate the child support obligation until September 1, 2015. But two of the three Financial Declarations filed by CSED show that no child support accrued for the

month of August 2015. This is in error. The child support stopped accruing on September 2, 2015, according to the Administrative Hearing Officer's prior orders.

The parties will have an opportunity to present further arguments on the issue of arrears following the issuance of this order. The parties are at liberty to brief the issues involved in the arrears calculations as noted above. Unless the parties request a hearing on another date, the court will calendar this matter for February 2, 2018, at 2:00 p.m. for further discussion on arrears owing to the Estate of Anderson. The parties may submit any documents in support of their respective positions regarding arrears prior to that hearing date.

DATED this 11th of January, 2018.

**B. ANN KEITH**
**Administrative Hearing Officer,**
**Superior Court of Guam**

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of: AG-CSD

W. Jones; W. Pole

Date: 1-11-18 Time: 4PM

Daisy Mae N. Osawa

-10-